UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
UNITED STATES OF AMERICA

                Plaintiff,

        -against-

THOMAS MAMMOLITO, THOMAS
AUTOMOTIVE, LLC, THOMAS DODGE
CORP. OF NEW YORK,

                Defendants.
-------------------------------------------------------x

<u>REPORT AND
RECOMMENDATION</u>

CV 09-3564 (JS) (ETB)

TO THE HONORABLE JOANNA SEYBERT, United States District Judge:

The plaintiff, the United States of America, brings this action against the defendants, Thomas Mammolito ("Mammolito"), Thomas Automotive, LLC ("Thomas Automotive") and Thomas Dodge Corp. of New York ("Thomas Dodge") (collectively referred to as "defendants"), for moneys owed in connection with the advancement of certain funds by plaintiff to defendants for the purpose of financing a business venture. A motion for default judgment was filed by the plaintiff on May 24, 2011 and the matter was referred to the undersigned for a recommendation with respect to whether the motion should be granted, as well as any accompanying damages.

For the following reasons, I recommend that plaintiff's motion for a default judgment be granted and that plaintiff be awarded damages in the amount of $1,274,167.94.

FACTS

On February 5, 2008, the United States, through an entity known as the Long Island Development Corporation ("LIDC"), a development corporation certified by the Small Business

Administration ("SBA") to administer business loans, entered into a loan agreement, secured by a promissory note (the "Note"), with 1800 Route 112 Realty, LLC. ("112 Realty"). (Hogan Decl. ¶ 2 and Ex. 1, annexed thereto.) Defendant Mammolito entered into the loan agreement on behalf of 112 Realty. (Id.; Tr. 6-7.) The loan was collateralized by individual guarantees (the "Guarantees") executed by the individual defendant, Mammolito, and Thomas Automotive LLC and Thomas Dodge Corp. of New York, as well as a second mortgage (the "Mortgage") on the real estate that 112 Realty occupied. (Tr. 6; Kapur Decl. ¶ 5.) That same day, LIDC assigned its interest in the Note, the Mortgage and the Guarantees to the SBA. (Hogan Decl. ¶ 5.)

The loan was disbursed to 112 Realty on March 12, 2008. (Hogan Decl. ¶ 7.) Pursuant to the loan agreement, the SBA, acting through LIDC, advanced 112 Realty $1,091,000 in capital. (Hogan Decl., Ex. 1.) On March 18, 2008, LIDC sent 112 Realty a letter outlining the terms of the loan, which provided for a twenty-year repayment schedule based on a fixed interest rate of 5.56677 percent. (Tr. 11; Hogan Decl. Ex. 6.) 112 Realty selected a monthly payment option. (Tr. 11.) Pursuant to this agreement, an outside provider would debit monthly payments in the amount of $8,549.73 from an account designated by 112 Realty. (Hogan Decl. Ex. 6A.)

112 Realty made the required payments on the loan during the months of April and May 2008. (Tr. 14; Hogan Decl., Ex.8.) In May 2008, 112 Realty sought a temporary cessation of future loan payments, citing corporate cash flow problems as the reason for its inability to comply with its obligations under the loan. (Tr. 20; Hogan Decl., Ex. 10.) 112 Realty was granted a payment suspension for the months of June, July, and August 2008. (Tr. 20; Hogan Decl., Ex. 11.) 112 Realty's requirement to make its regularly scheduled payments resumed in September 2008. (Tr. 21.) However, the payment amount increased to $9,023.58 to reflect the

suspended payments. (Tr. 21; Hogan Decl., Ex. 11.) In September 2008, 112 Realty made its first post-deferral payment. (Tr.2; Hogan Decl., Ex. 8.) However, 112 Realty again found itself unable to commit to making future payments and the SBA granted it a second three-month suspension of its loan obligations for the months of October, November and December 2008. (Tr. 23-24; Hogan Decl., Ex. 14-15.)

112 Realty failed to make its January 2009 payment, at which time the SBA declared it to be in default under the terms of the loan agreement. (Tr. 26.) On March 20, 2009, LIDC sent the guarantors, Mammolito, Thomas Automotive, and Thomas Dodge, a letter declaring the loan in default, and accelerating the loan so that any of the defendants could cure the defect by paying the entire amount of the loan. (Tr. 27; Pl. Ex. 5) None of the defendants paid the loan obligations. (Tr. 27.) On August 18, 2009, the United States commenced this action to recover the monies owed under the loan agreement.

An inquest was held before the undersigned on September 21, 2011. Defendants did not appear at the inquest. In support of its motion, the United States called two witnesses, John Hogan, the Assistant Vice President for the New York Business Development Corporation,[1] and Celeste Kapur, District Counsel for the SBA.

DISCUSSION

I. Default Judgment

When a party fails to appear or defend an action by an adverse party, a default may be

---

[1] In February 2009, LIDC voluntarily transferred its certificate as a development company back to the SBA, at which time the SBA appointed the New York Business Development Corporation to take over LIDC's portfolio. (Tr. 7.)

entered against the non-moving party.  See Fed. R. Civ. P. 55.  "A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true."  Heartland Payment Services, Inc. v. Island Pride Homes, Inc., No. 10 Civ. 1739, 2011 WL 4458988, at *2 (E.D.N.Y. Aug. 31, 2011) (citing Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp., No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007)); see also Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp., 973 F.2d 155, 158 (2d. Cir. 1992).  Damages, however, must be proven, usually "at an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed."  Time Warner Cable of N.Y. v. Rivera, No. 99-2339, 1995 WL 362429, at *2 (E.D.N.Y. June 8, 1995) (citing Greyhound Exhibitgroup, 973 F.2d at 158).  Plaintiff "is entitled to all reasonable inferences from the evidence it offers."  Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 112 (E.D.N.Y. 1997) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

Federal Rule of Civil Procedure 55(b)(2) provides that, upon entering a default judgment, the court may "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).  Upon hearing an application for entry of a default judgment, "a district court judge is required to exercise his 'sound judicial discretion' in determining whether the judgment should be entered."  Wong v. East River Chinese Restaurant, 884 F. Supp. 663, 669 (E.D.N.Y. 1995).

Federal Rule of Civil Procedure 54(c) "limits the damages recoverable by a plaintiff following a default judgment to the type and quantity of damages demanded in the complaint

. . . ." Ames v. Stat Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y.); see also Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). Accordingly, plaintiff is limited to the actual damages pleaded in its Complaint of $1,084,083.97. (Compl.¶ 9.) However, plaintiffs' request for interest may be awarded in an amount determined by the court. See Ames, 227 F.R.D. at 362 (finding that Rule 54(c) "does not require plaintiff to have demanded a sum certain" with respect to damages that accrue during the pendency of a proceeding and are "explicitly requested in the complaint, and sufficiently established by the affidavits submitted by plaintiff[]").

Here, plaintiff filed its Complaint on August 17, 2009. Defendants answered the Complaint on October 26, 2009. However, by Stipulation dated May 19, 2011, defendants withdrew their Answer and agreed not to file a new one or to file a motion to dismiss. (Stipulation and Order dated May 19, 2011.) The Court so ordered the parties' stipulation on May 23, 2011. (Order of Seybert J., dated May 23, 2011.) Thereafter, on May 24, 2011, plaintiff moved for the entry of a default judgment against defendants. The Clerk the Court certified the defendants' default on May 25, 2011. (Certificate of Default dated May 25, 2011.) As stated above, defendants did not appear at the inquest held before the undersigned on September 21, 2011.

Accordingly, I recommend that plaintiff's motion for a default judgment be granted.

II. Damages Pursuant to the Agreement

The total amount of money borrowed by 112 Realty was $1,091,000. (Hogan Decl., Ex. 1.) 112 Realty made three loan payments for the months of April, May and September 2008,

totaling $26,123.04. (Tr. 15-16, 21.) According to the amortization schedules for both the original agreement and the new agreement following defendants' two payment suspensions, $6,916.03 of the loan payments made by defendants are credited toward the principal owing on the loan. (Hogan Decl., Ex. 6B - Ex. 12.)

As stated above, a second mortgage on the real property that 112 Realty occupied served as partial collateral for the loan. (Tr. 29, 32.) A first mortgage was held by a third-party lender, Unity Bank. (Tr. 32; Kapur Decl. ¶ 7.) In 2009, Unity Bank foreclosed upon the property and sold it. (Tr. 32; Kapur Decl. ¶ 7.) There were no excess proceeds to be given to the United States from the foreclosure sale. (Tr. 32.) However, prior to the foreclosure sale, Unity Bank paid the SBA $25,000 for a release of its statutory right of redemption under 28 U.S.C. § 2410. (Tr. 32.) The plaintiff has credited $24,250 of the money received from Unity Bank toward the principal of the loan.[2] (Tr. 33-34.)

Based on the foregoing, the deficiency remaining on the loan amounts to $1,059,833.97. The testimony and documentary evidence submitted by plaintiff at the inquest support this figure. Accordingly, I recommend that the plaintiff be awarded actual damages in the amount of $1,059,833.97.

III.     Interest

The Note provides for the SBA to recover, from the guarantors, interest on the unpaid balance of the loan at a fixed interest rate of 5.56677%. (Hogan Decl., Ex. 6A.) Mr. Hogan

---

[2] The Department of Justice deducts a three percent fee for all agency collections that it makes. (Tr. 33.) In this case, the fee amounted to $750.

testified that the rate is initially determined as part of the debenture rate by the underwriters and the funding corporation for the development companies. (Tr. 11.) The debenture rate assumes payments are made to the investor every six months (Tr. 11.) The terms of the loan provide for monthly, not semiannual, payments. (Tr. 11.) Colson Services, the loan servicer, calculates the actual monthly interest rate that, when taken in the aggregate, will amount to the debenture rate payment. (Tr. 11.)

Plaintiff seeks interest on the unpaid balance of the loan through the date of final judgment in this action. As of September 2, 2011, the total interest accrued using the interest rate set forth above is $194,293.09, with interest continuing to accrue at a rate of $161.62 per day. (Tr. 34.) As of the date of this Report and Recommendation, January 4, 2012, the total interest due and owing is $214,333.97.[3] Accordingly, I recommend that plaintiff be awarded interest in the amount of $214,333.97, with additional interest to be calculated at a rate of $161.62 per day through the date of judgment herein.[4]

RECOMMENDATION

For the foregoing reasons, I recommend that plaintiff's motion for a default judgment be granted and that plaintiff be awarded damages as follows: (1) $1,059,833.97 in actual damages for the deficiency remaining on the monies advanced to the defendants pursuant to the promissory note; and (2) $214,333.97 in interest, as well as additional interest to be calculated at

---

[3] Calculated based on the number of days between September 2, 2011 and January 4, 2012, which is 124.

[4] Counsel for the plaintiff represented to the Court at the inquest hearing that plaintiff is not seeking to recover its attorney's fees or costs associated with this action. (Tr. 37.)

a rate of $161.62 per day through the date of judgment herein, for a total monetary award of $1,274,167.94, plus additional interest. Any judgment should be entered jointly and severally against all defendants.

### OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
       January 4, 2012

                                                /s/ E. Thomas Boyle
                                                E. THOMAS BOYLE
                                                United States Magistrate Judge